IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CATHY BAILEY, Individually and as Representative of the Estate of Corey Deon Bailey, Deceased, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:09-CV-0865-K |
| DALLAS COUNTY, TEXAS AND DALLAS COUNTY CORRECTIONAL OFFICERS JULIA QUIROGA, CRAIG ELLIOT, QUINTON LACY, TIMOTHY CLICK, and DANIEL MORENO, | § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the following motions: (1) Defendant Dallas County, Texas' ("County") Motion for Summary Judgment (Doc. No. 90); (2) Defendant Julia Quiroga's ("Quiroga") Motion for Summary Judgment (Doc. No. 93); (3) Defendant Craig Elliott's ("Elliott") Motion for Summary Judgment (Doc. No. 94); (4) Defendant Timothy Click's ("Click") Motion for Summary Judgment (Doc. No. 95); (5) Defendant Daniel Moreno's ("Moreno") Motion for Summary Judgment (Doc. No. 96); and (6) Defendant Quinton Lacy's ("Lacy") Motion for Summary Judgment (Doc. No. 97).

For the following reasons, the Court **DENIES** Defendant Quiroga, Elliott, Click, Moreno, and Lacy's (collectively "Individual Defendants") motions for summary

judgment.  The Court **DENIES** the County's motion for summary judgment as it relates to Plaintiff's claim for denial of medical care.  The Court **GRANTS** the County's motion for summary as to Plaintiff's claim for failure to train and to any state law claims.

## I.      Factual and Procedural Background

The summary judgment record establishes the following undisputed relevant facts:

Corey Deon Bailey ("Bailey"), son of Plaintiff Cathy Bailey ("Plaintiff"), was booked into the Dallas County Jail ("DCJ") on June 17, 2008, to serve a term of commitment related to convictions for Driving While Intoxicated and Driving While License Suspended.  At the time of booking, Bailey notified jail personnel he suffered from asthma, which was noted on his Intake Health Screening/Assessment form.

At approximately 11:50 p.m. on June 26, 2008, Bailey began suffering from paranoid delusions, claiming someone was trying to kill him.  Defendant Quiroga and another guard (not a defendant in this case) escorted Bailey to the nurse's station to be evaluated.  The jail nurse, Nurse Sheran Stanifer, contacted  the on-call jail psychiatrist who ordered the nurse give him Zyprexa Zydis, a psychotropic drug.  These types of drugs are not kept at Decker Jail, the section of DCJ where Bailey was being housed.  The jail psychiatrist told Nurse Stanifer to transfer Bailey to the West Tower, another section of DCJ where he could be observed by the jail psychiatric staff in an open observation tank ("OBO").  Nurse Stanifer did not administer any medications to Bailey.  He was placed into a single holdover cell to await transfer.  No other inmate was in the cell with him.

While he waited, Bailey repeatedly beat his fists on the cell door and walls, screaming that someone was going to kill him. At approximately 5:45 a.m., the guards received permission to transfer Bailey to the West Tower; more than five hours since his visit to the nurse's station. Defendant Quiroga sent Defendants Click, Lacy, and Elliott to carry out the transfer. They arrived at his cell before Defendant Quiroga was there. They could hear Bailey banging on the door and walls, and screaming someone was going to kill him. Defendants Elliott and Click did not discuss a plan to remove Bailey. Defendant Elliott told Bailey to back away from the door or he would be pepper-sprayed. Bailey did not comply, and, as the door was opened, Defendant Elliott sprayed a two second burst of Oleoresin capsicum ("OC spray"), a component of pepper spray, at Bailey's face. While these Defendants tried to handcuff him, Bailey was taken to the ground. He was eventually handcuffed after several minutes of struggling. Bailey was stood up against the wall and ordered to stand still. Bailey continued to move around, so Defendant Elliott held Bailey by his shirt collar and placed him back against the wall. Defendant Elliott continued his hold of Bailey's shirt, so Defendant Quiroga ordered Defendant Elliott to let go, and he did. Bailey was then taken to the transport van, and Defendants Quiroga, Elliott, Lacy, and Click accompanied him.

While being transported to the West Tower, Bailey did not resist. Once they arrived, Bailey would not initially get out of the van. Eventually he was coaxed out, and he walked on his own to the entrance of the West Tower. But, he refused to enter,

claiming someone would kill him if he went inside.  Defendants Elliott, Lacy, and Click carried him to the elevator, and Defendant Quiroga walked along side.

At approximately 6:00 a.m., Bailey was taken to the nurse's station on the 5th floor to clean the OC spray from his face.  These Individual Defendants laid Bailey, still handcuffed, face down on the floor, then turned him over.  He sat up and acted agitated. These Individual Defendants held down his legs and shoulders so the nurse could clean his face.  As Nurse Matthews started cleaning his face, Bailey began spitting.  Defendant Lacy grabbed a plastic trash bag to use as a spit guard.  Defendant Quiroga instructed Defendant Lacy to make sure not to cover Bailey's nose with the bag.  A surgical-type mask was found and then placed over Bailey's mouth and nose.

Nurse Matthews was able to finish cleaning his face as well as an old scab wound on his knee.  When this was done, these Individual Defendants helped Bailey, who was still handcuffed, stand up.  He walked to the door, but when he reached the doorway, he stopped and again said that someone was going to kill him.  Bailey dropped to his knees and refused to walk.  These Individual Defendants carried Bailey to the elevator to take him to the Open Observation tank ("OBO") on the 9th floor.  They were met on the 9th floor by Defendant Moreno.  The Individual Defendants carried Bailey to his cell and laid him face down.  Bailey was ordered not to move, and his handcuffs were removed.  The Individual Defendants then left Bailey in his cell, at approximately 6:12 a.m., to get an OC Spray Administrative Warning card ("OC Warning").  The OC Warning is required to be read to anyone who has been sprayed with OC spray.  When

they returned, the Individual Defendants read him the OC Warning, but Bailey did not verbally respond.  Defendant Quiroga saw Bailey's feet move.  They left Bailey in the cell and a shift change occurred at 6:15 a.m.

At approximately 6:28 a.m., jail guards (not the Individual Defendants) were alerted that Bailey was unresponsive in his cell in OBO.  Bailey was found face down in the same position the Individual Defendants left him.  The guards began life saving measures until jail nurses arrived at approximately 6:38 a.m.  At approximately 6:40 a.m., paramedics arrived and transported Bailey by ambulance to Parkland Memorial Hospital where he was pronounced dead at 7:35 a.m..

An autopsy was performed by the Southwestern Institute of Forensic Sciences.  The findings made by the medical examiner were as follows: (1) toxic effects of phencyclidine ("PCP") in combination with restraint; (2) minor blunt force injuries; (3) slight cardiomegaly; and (4) history that deceased was found unresponsive in his jail cell after an episode of agitation and physical confrontation with officers at the jail.  The autopsy report concluded:

> It is our opinion that Corey Deon Bailey, a 31-year-old black male, dies as the result of the toxic effects of [PCP] including excited delirium, in combination with restraint by police officers.  Physiological stress associated with restraint is likely contributory.  Traumatic asphyxia associated with restraint may or may not have been contributory.

After this incident, the Dallas County Sheriff's Department conducted a custodial death investigation during which the Individual Defendants gave statements.  In his statement, Defendant Lacy said, "I did not put a plastic bag on the inmate's mouth."

This contradicted the statements given by Defendants Quiroga and Elliott, as well as Nurse Joyce Lyn Balko, who was also in the nurse's station at the time of the incident. They all stated Defendant Lacy had placed a plastic bag over/on Bailey's mouth. Internal Affairs subsequently investigated these conflicting statements.  After an investigation that included a lie detector test, Internal Affairs ultimately concluded that Defendant Lacy was untruthful during the investigation, and he was terminated as a result.

Plaintiff filed this lawsuit on May 8, 2009.

Plaintiff offers the following additional facts which are disputed:

Defendant Quiroga knew that trying to remove Bailey from his cell would be difficult, so she needed "mature officers with "good judgment."  But two of the three guards she chose arguably had anger issues.  A few weeks prior to this incident, Defendant Lacy had been disciplined for yelling at Defendant Quiroga, his supervisor. As a result, he was required to attend anger management classes.  Defendant Elliott had been demoted in 2005 after the Internal Affairs department learned he had choked a female co-worker.

Plaintiff  offers summary judgment evidence that Nurse Matthews cleaned Bailey's face with an alcohol-based cleaner.  As a result, Bailey did not spit at the nurse, but spit as an involuntary reaction to the cleaner.

Nurse Balko, who saw the incident, watched Defendant Lacy place the plastic bag directly covering Bailey's mouth and/or nose.   Franklin Ford, another inmate being

treated at the nurse's station who also saw the incident, said Defendant Lacy held the plastic bag on Bailey's face for "at the most a minute."

Carrying him by his boxer shorts, the Individual Defendants dragged Bailey down the 9th floor hall, his arms hanging down and his head hitting the floor. The Individual Defendants also used a chokehold on Bailey even though he was not resisting or struggling. Bailey was gagging and convulsing with the surgical-type mask still covering his face. Bailey already looked lifeless before they put him in the cell. Even though the surgical-type mask was still covering his mouth and nose, the Individual Defendants laid him face down on the floor. Two of the Individual Defendants gave each other a high-five when they put Bailey in the cell. Bailey appeared to be in distress and was twitching as the Individual Defendants walked away.

When the Individual Defendants returned to read the OC Warning, one told Bailey, "You're not going to act like that on my watch." Defendant Click read the OC Warning through the door, but Bailey did not respond. The Individual Defendants walked away laughing.

Nurse Ethelyn Briscoe, a psychiatric nurse, tried to see Bailey at approximately 6:15 a.m., just after arriving for her shift. She went to the 9th floor control room looking for him, but Defendant Moreno told her Bailey had already been taken care of and there was no need for her to check on him. She asked to "lay eyes" on Bailey just to make sure he was okay, but Defendant Moreno angrily refused and told her to leave immediately.

At approximately 6:28 a.m., another inmate alerted Officer Butler-Jones, a guard from the new shift, that Bailey was still lying face down in his cell and he did not appear to be breathing.  Officer Butler-Jones and two other guards arrived at Bailey's cell to find him face down with a surgical-type mask still on his face.  The guards also noticed his boxer shorts were pulled or wedged up into his rear.

According to the autopsy report, the amount of PCP in Bailey's system was merely a trace amount, and could not be quantified as it was below the threshold screen.

## II.    Individual Defendants' Motions for Summary Judgment

### A.    Summary Judgment Standard for Qualified Immunity Cases

Summary judgment is appropriate when the pleadings, affidavits and other summary judgment evidence show that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law.  FED.R.CIV.P. 56©); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A dispute of a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant, and all disputed facts resolved in favor of the nonmovant.  *See United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962); *Boudreaux v. Swift Transp. Co., Inc..*, 402 F.3d 536, 540 (5th Cir. 2005).

In a typical summary judgment analysis, the movant bears the burden of showing that there is no genuine issue of material fact by informing the court of the basis of its

motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp.*, 477 U.S. at 323. However, in § 1983 litigation, a government employee who asserts a defense of qualified immunity in his summary judgment motion need only assert the defense in good faith. *See Gates v. Tex. Dep't of Protective Servs.*, 537 F.3d 404, 419 (5th Cir. 2008); *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007). There is no burden for the government employee to put forth any evidence. *Beck v. Tex. State Bd. of Dental Examiners*, 204 F.3d 629, 633-34 (5th Cir. 2000).

Once the qualified immunity defense has been asserted, the non-movant must then show that the defense does not apply. *See Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009); *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)(en banc). To satisfy his burden, the non-movant must identify specific evidence in the record and establish for the court a genuine issue of material fact exists. *Celotex*, 477 U.S. at 324. Although courts view evidence in the light most favorable to the non-movant, summary judgment cannot be defeated with "conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)). The non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249.

### B.    Qualified Immunity

Individual Defendants Quiroga, Elliott, Click, Moreno, and Lacy (collectively "Individual Defendants") each move for summary judgment on the affirmative defense of qualified immunity.

A government employee who is sued under §1983 may assert an affirmative defense of qualified immunity.  *White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992). Qualified immunity protects government employees performing discretionary functions from suit as well as liability for civil damages to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity protects all government employees except "the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

 In deciding whether a defendant is entitled to qualified immunity, the court conducts a two-prong inquiry.  Under the first prong, the court considers whether the facts alleged, taken in the light most favorable to the plaintiff, show a violation of a constitutional right.  *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 236-38 (2009)(the sequence in which district and appellate courts address the two prongs of the *Saucier* test is no longer mandatory; these courts may exercise their discretion in deciding which of the two prongs to address first). The second prong requires the court to determine whether the violated constitutional right was clearly established within the specific context of the case. *Saucier*, 533 U.S. at

201.  To determine whether a right is clearly established, the dispositive question is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Id.* at 202.   If the court finds the facts do show a constitutional violation and it was a clearly established constitutional right that was violated, the government employee is not entitled to qualified immunity.  *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 410 (5th Cir. 2009).

The Individual Defendants have each asserted the affirmative defense of qualified immunity, thereby meeting their burden.  *See Gates*, 537 F.3d at 419.  The burden has now shifted to Plaintiff to submit evidence establishing that the Individual Defendants violated Bailey's constitutional rights and this violation was objectively unreasonable under clearly established law at the time.  *See Zarnow v. City of Wichita Falls, Tex.*, 500 F.3d 401, 407-08 (5th Cir. 2007).  Plaintiff claims Individual Defendants violated Bailey's Eighth Amendment rights when they used excessive force on him and denied him access to medical care.  At the summary judgment stage, it is inappropriate for the Court to make any credibility determinations between Plaintiff's and Defendants' version of events.  *See Tarver v. City of Edna*, 410 F.3d 745, 753 (5th Cir. 2005)(citing *Bazan v. Hidalgo County*, 246 F.3d 481, 491-92 (5th Cir. 2001)).

## 1.    Constitutional Violation

The Court first turns to whether Plaintiff submitted evidence establishes that the Individual Defendants violated Bailey's constitutional rights.  Plaintiff alleges Defendants Quiroga, Elliott, Lacy, and Click violated Bailey's constitutional rights by

using excessive force and/or being deliberately indifferent to Bailey's serious health and medical needs.

The facts show that Bailey had been booked into the Dallas County Jail on June 17, 2008, to serve a term of commitment related to convictions for Driving While Intoxicated and Driving While License Suspended. The actions at issue in the case occurred June 27, 2008. Because Bailey was a convicted prisoner at the time of the alleged incident of excessive force, Plaintiff's claims are properly analyzed under the Eighth Amendment. *See Whitley v. Albers*, 475 U.S. 312, 326-27 (1986).

a)      Excessive Force–Standard

Plaintiff alleges Defendants Quiroga, Elliott, Lacy, Moreno, and Click used excessive force on Bailey when (1) Defendant Lacy placed the plastic bag over Bailey's mouth and/or nose, (2) the Individual Defendants failed to remove the surgical-type mask from Bailey's face, and (3) some or all of the Individual Defendants used a chokehold on Bailey.

Excessive force claims made under the Eighth Amendment address whether the official's conduct amounts to "unnecessary and wanton infliction of pain" making it cruel and unusual punishment. *Id.* at 319 ("To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety."). The core judicial inquiry is whether any force applied was done so "in a good faith effort to maintain or restore discipline or maliciously and sadistically" to inflict harm. *Hudson v. McMillian*, 503 U.S.

1, 7 (1992). This inquiry is two part: (1) objectively, the court considers whether the alleged wrongdoing was sufficiently harmful to violate a constitutional right; and, (2) subjectively, the court considers the state of mind of the alleged wrongdoer. *Id.* at 8 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). In determining whether the use of force was "wanton and unnecessary," the court may consider (1) the extent of injury the inmate suffered, (2) the need for the force to be used, (3) the relationship between that need and the amount of force used, (4) the threat "'reasonably perceived by the responsible official'", and (5) any attempts made to mitigate "'the severity of a forceful response.'" *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).

The objective element centers on the nature of the force use; more specifically, "whether it was nontrivial and 'was applied . . . maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, — U.S. —, 130 S.Ct. 1175, 1178 (2010)(quoting *Hudson*, 503 U.S. at 7). The central inquiry is not the extent of the injury, although that may be an indication of the amount of force used. *Wilkins*, — U.S. —,130 S.Ct. at 1178-79. While not every "malevolent touch" by a prison official gives rise to a federal action, a prison official's malicious and sadistic use of force always violates "contemporary standards of decency." *Hudson*, 503 U.S. at 9. As for the subjective component, there is often no specific evidence of the government official's subjective intent. However, where there is no legitimate purpose for the officers' conduct, malicious and sadistic intent may be inferred from their conduct alone. *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1152 (10th Cir. 2006).

b)    Excessive Force–Showing

1.    Plastic Bag and Surgical-Type Mask

The Court finds Plaintiff submitted sufficient summary judgment evidence to raise a genuine issue of material fact as to whether Defendant Lacy's use of the plastic bag to cover Bailey's mouth and/or nose was done maliciously and sadistically. Supported by her summary judgment evidence, Plaintiff's version of the events, which the Court must accept as true, show that Defendant Lacy held a plastic bag on Bailey's face, covering his nose and/or mouth, after he spat in the direction of one of the nurses while she was attempting to clean the pepper spray from his face using an alcohol-based cleaner.  Plaintiff's evidence, including a supplemental investigation narrative (Pl. Ex. No. 17), also evidences that the plastic bag was in place for up to one minute, and that Defendant Quiroga told Defendant Lacy "a couple of times" not to cover Bailey's nose. Plaintiff argues the use of the plastic bag constitutes excessive force considering Bailey was handcuffed, being held down by the other Defendant guards, and was severe in comparison to the provocation, as the plastic bag trapped fumes from the pepper spray and the alcohol-based cleaner.  Individual Defendants argue Defendant Lacy placed the plastic bag a few inches in front of Bailey's mouth, never touching his face, and only for a few seconds until a surgical-type mask could be found.  This is simply a differing version of the facts, and the Court cannot make any credibility determinations between Plaintiff's and Individual Defendants' version on summary judgment. *See Tarver*, 410 F.3d at 753.

The Court concludes that, taking Plaintiff's version of the events as true, a reasonable jury could find that Defendant Lacy's conduct was not "nontrivial" but was malicious and sadistic, and Defendant Lacy's response with and use of the plastic bag to obstruct Bailey's mouth and/or nose was disproportionate to the provocation of spitting and any threat it may have posed.

Defendants argue the use of the plastic bag was not excessive force per se, highlighting that Plaintiff adduces no evidence that Bailey was indeed suffocated by the bag. Although there may be a lack of physical injury to Bailey, this alone does not conclusively establish a lack of malicious or sadistic intent or that the force used by Defendant Lacy was "nontrivial" or *de minimus* in light of Plaintiff's summary judgment evidence. Case law is well established that the core inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7; *accord Wilkins*, — U.S. —, 130 S.Ct. at 1178 (emphasizing that the inquiry is "not whether a certain quantum of injury was sustained.") Bailey's injuries are merely one factor this Court may consider in the analysis. Defendant Lacy also argues his use of the plastic bag was not excessive in light of the circumstances that he was spitting on the nurse, a felony assault under state law, and that Plaintiff failed to adduce any evidence that Bailey's death resulted "directly and only" from the use of the plastic bag. The cases to which Defendant Lacy cites the Court address arrestees or detainees and are, therefore, inapposite to this case because the standard for establishing an excessive force claim in an Eighth Amendment context

involving a prisoner is different.  The remainder of Defendants' arguments center on different accounts of what transpired.  Specifically, that Defendant Lacy held the plastic bag over Bailey's mouth, not on it causing an obstruction, and that it was only for a few seconds.  This simply creates competing accounts of the event.  It is not appropriate for this Court to make credibility determination on summary judgment.  *See also Johnson v. Dubroc*, 3 F.3d 436, 1993 WL 346904, *3 (5th Cir. 1993)(summary judgment evidence presented by both sides established a factual dispute as to whether defendant used force maliciously and sadistically to cause plaintiff harm, not in a good-faith effort to restore discipline, so it was issue for fact-finder to determine whether force was imposed with malice).

Plaintiff also contends the surgical-type mask, used initially as a spit guard, was never removed from Bailey's face once he left the nurse's station which constitutes excessive force.  Plaintiff's version of the events, as supported by her summary judgment evidence, shows Bailey was gagging and convulsing, as if throwing up, when being carried to the 9th floor OBO cell.  The Individual Defendants left Bailey, who appeared lifeless, lying face down on the floor of the cell, with the mask still over his mouth and nose. Even though he was no longer a spitting threat to the nurse, they did not remove this mask, which potentially trapped the fumes from the OC spray and the alcohol-based cleaner and was covering his mouth and nose while lying face down on the floor. Defendants present no specific arguments in relation to this claim, but do claim that Nurse Matthews used a saline-based cleaner on Bailey's face and her reference to an

alcohol-based cleaner was a mistake.   Again, this comes down to competing versions of the events that took place.  *See Tarver*, 410 F.3d at 753.

Accordingly, Plaintiff's summary judgment evidence creates a genuine issue of material fact as to the circumstances which led to the Individual Defendants' use of force against Bailey in the context of the plastic bag and the surgical-type mask.  Plaintiff's evidence could support a reasonable jury in finding that Defendant Lacy's use of the plastic bag over Bailey's mouth and/or nose, for possibly up to one minute was not done "in a good faith effort to maintain or restore discipline" and was not "nontrivial" but was disproportionate to any possible provocation.  *Whitley*, 475 U.S. at 320-21; *see also Johnson*, 3 F.3d 436, 1993 WL 346904 at *3 (summary judgment evidence presented by both sides established a factual dispute as to whether defendant used force maliciously and sadistically to cause plaintiff harm, so it was issue for fact-finder to determine whether force was imposed with malice).  Additionally, Plaintiff's evidence could support a reasonable jury's finding that the Individual Defendants' failure to remove the surgical-type mask from Bailey was also not done "in a good faith effort to maintain or restore discipline" and was not "nontrivial" but was disproportionate to any possible provocation.  *Whitley*, 475 U.S. at 320-21; *see also Johnson*, 3 F.3d 436, 1993 WL 346904 at *3.

## 2.   Chokehold

Plaintiff submits evidence that Individual Defendants Quiroga, Click, Elliott, and/or Lacy placed Bailey in a chokehold while transporting him to his 9th floor cell.

Plaintiff argues this was excessive force, particularly in light of her evidence that Bailey was not struggling or resisting at the time, clearly indicating there was no legitimate purpose for this conduct.   Defendants Quiroga, Click, Elliott, and/or Lacy argue there is no evidence, other than the one sworn affidavit of another inmate, which establishes they used a chokehold on Bailey.   Alternatively, they contend that even if they had used it, there is no evidence the chokehold was excessive.   Plaintiff presents one sworn affidavit referring to Bailey being placed in a chokehold;   this does not equate to no evidence.  The Court recognizes that Defendants object to this inmate's affidavit as not being competent.   However, as the Court addresses later, this affidavit is indeed competent.  This inmate saw the incident himself.  Admittedly, he did not identify the guards involved by name and indicates he learned later the inmate in the chokehold was Bailey; however, these are credibility issue which are not to be determined on summary judgment.

As for whether a chokehold was even used, the Court is again presented with differing versions of what events occurred; and such credibility determinations are not appropriate for summary judgment.  *See Bazan*, 246 F.3d at 491-92; *see also Johnson*, 3 F.3d 436, 1993 WL 346904 at *3.   Individual Defendants' alternative argument that there is no evidence the chokehold was excessive is also a fact question.   Plaintiff's version of the events, which the Court must take as true, shows Bailey was not struggling or resisting, was gagging and convulsing, and already appeared dead.  Additionally, he had a surgical-type mask covering his mouth and nose.  Therefore, a genuine issue of

material fact has been raised.  A reasonable jury could find that Defendants Quiroga, Elliott, Lacy, and/or Click did use a chokehold on Bailey, and they could infer malicious and sadistic intent because it was not done "in a good faith effort to maintain or restore discipline" and was not "nontrivial" but was disproportionate to any possible provocation.  *Whitley*, 475 U.S. at 320-21; *see also Johnson*, 3 F.3d 436, 1993 WL 346904 at *3 (summary judgment evidence presented by both sides established a factual dispute as to whether defendant used force maliciously and sadistically to cause plaintiff harm, not in a good-faith effort to restore discipline, so it was issue for fact-finder to determine whether force was imposed with malice).

The Court finds that Plaintiff presents sufficient summary judgment evidence to create a genuine issue of material fact as to whether: (1) Defendant Lacy violated Bailey's constitutional rights by placing a plastic bag over his mouth and/or nose; (2) the Individual Defendants violated Bailey's constitutional rights by failing to remove the surgical-type mask covering his mouth and nose, possibly trapping in fumes from OC spray and alcohol-based cleaner, once he was no longer able to spit on the nurse, already appeared lifeless, and was lying face down on the cell floor; and (3) whether the Individual Defendants violated Bailey's constitutional rights when all or some of them placed Bailey in a chokehold even though he was not resisting or fighting.

### c)    Deliberate Indifference to Bailey's Serious Health and Medical Needs–Standard

Plaintiff alleges Individual Defendants Quiroga, Elliott, Lacy, Click and Moreno knew Bailey was experiencing severe medical problems and actions were taken putting

his health at serious risk, but the Individual Defendants acted with conscious and deliberate indifference.  Specifically, Plaintiff contends: (1) Defendants Quiroga, Elliott and Click violated Bailey's constitutional rights when they were deliberately indifferent to a serious risk of harm to Bailey in failing to stop Defendant Lacy from putting the plastic bag over Bailey's mouth and/or nose; (2) the Individual Defendants who did not actively participate in the chokehold, if any, violated Bailey's constitutional rights when they were deliberately indifferent to a serious risk of harm to Bailey when they failed to stop it; (3) the Individual Defendants violated Bailey's constitutional rights when they were deliberately indifferent to a serious risk of harm to Bailey when they left him in his 9th floor cell even though he was in need of urgent medical care; and (4) Defendant Moreno violated Bailey's constitutional rights when he was deliberately indifferent to Bailey's serious medical needs as well as a serious risk of harm to his health in preventing Nurse Briscoe, a jailhouse psychiatric nurse, from checking on Bailey after he was put in his cell.

As the Court already discussed, Plaintiff's claims are properly analyzed under the Eighth Amendment because Bailey was a convicted prisoner at the time of the incident. *See Whitley*, 475 U.S. at 326-27.  A prison official violates an inmate's constitutional rights when he acts with deliberate indifference to the inmate's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006)(plaintiff must show that the jail or prison officials refused to treat the inmate, ignored his complaints, intentionally treated the inmate incorrectly, or acted in any

similar way which would show a wanton disregard for any serious medical needs); *see also Domino v. Tex. Dep't of Crim. Justice,* 239 F.3d 752, 756 (5th Cir. 2001)(plaintiff must show officials acted in way that clearly evidences "a wanton disregard for any serious medical needs."). This requires proof that jail officials were subjectively aware of a substantial risk of serious harm and failed to take reasonable measures to abate this risk. *Hare v. City of Corinth, Miss.,* 74 F.3d 633, 649 (5th Cir. 1996)(citing *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)). The standard of deliberate indifference allows courts to distinguish omissions which are an intentional choice from those which are simply unintentional oversights. *Southard v. Tex. Bd. of Crim. Justice,* 114 F.3d 539, 551 (5th Cir. 1997)(internal citations omitted). The Fifth Circuit has defined a serious medical need as one which is "so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell,* 463 F.3d 339, 345 n.12 (5th Cir. 2006).

          d)      Deliberate Indifference to Bailey's Serious Health and Medical Needs–Showing

The Court finds that Plaintiff has met her summary judgment burden, presenting sufficient evidence to create a genuine issue of material fact as whether the Individual Defendants were consciously and deliberately indifferent to Bailey's serious health and medical needs.

          1.      Deliberate Indifference to Serious Risk of Use of Plastic Bag

The undisputed summary judgment evidence establishes that Defendants Quiroga and Elliott were present when Defendant Lacy held a plastic bag over Bailey's face.

Defendants Quiroga and Elliott argue that the use of the bag was not excessive force, and furthermore Bailey did not suffer any physical harm from it. The Court has already concluded that Plaintiff's summary judgment evidence creates a genuine issue of material fact as to whether Defendant Lacy's use of the plastic bag was excessive force which violated Bailey's constitutional rights. This argument, then, is unpersuasive. Equally unpersuasive is their argument that Bailey did not suffer any harm or adverse effects, as the Court has already stated the absence of injury is not determinative.

Plaintiff's argument centers on Defendants Quiroga and Elliott's conscious and deliberate indifference of a serious risk to Bailey's health when Defendant Lacy placed the plastic bag on Bailey's face covering his mouth and/or nose for up to one minute. Plaintiff argues that the risk of suffocation from such action was a serious risk because it is so apparent "that even laymen would recognize it." *Gobert* , 463 F.3d at 345 n.12. Defendants Quiroga and Elliott fail to present any evidence that they were not deliberately indifferent to a serious risk to Bailey's health and tried to abate the risk when Defendant Lacy placed the plastic bag over his mouth and/or nose. At most, Defendant Quiroga, who was Defendant Lacy's supervisor, told him not to cover Bailey's nose with the bag; a directive from her to remove the bag came only when a surgical-type mask was found. The Court agrees with Plaintiff–the risk of suffocation from a plastic bag being held on someone's mouth and/or nose, particularly someone who had been pepper-sprayed, for upwards of one minute is so apparent that even a layman would recognize it. The Court concludes Plaintiff has created a genuine issue of material fact

and a reasonable jury could find Defendants Quiroga and Elliott consciously disregarded a serious risk to Bailey's health or safety, failing to take reasonable measures to abate the risk, thereby violating his constitutional rights. *See Hare*, 74 F.3d at 649.

Defendant Click advances the same arguments as do Defendant Quiroga and Elliott. To that extent, his arguments are unpersuasive for the same reasons and a genuine issue of material fact exists from which a reasonable jury could find he consciously disregarded a serious risk to Bailey's health or safety, failing to take reasonable measures to abate the risk, thereby violating Bailey's constitutional rights. *See Hare*, 74 F.3d at 649. However, there is also conflicting evidence whether Defendant Click was even present at the time of this incident. His original affidavit indicates he was present for the entirety of Bailey's visit to the nurse's station when the plastic bag was used; however, his new affidavit indicates he left once Bailey was brought into the room and then returned to find the surgical-type mask already placed on him. Relying on his new affidavit, Defendant Click argues that Plaintiff cannot establish he was present, so he could not have violated Bailey's rights. This certainly creates a credibility question which is inappropriate at summary judgment. Plaintiff has created a genuine issue of material fact as to Defendant Click's presence.

2.     Deliberate Indifference to Serious Risk of Chokehold

The Court has already concluded that Plaintiff made a sufficient showing to create a genuine issue of material fact as to whether Individual Defendants Quiroga, Elliott, Lacy, Click and/or Moreno used excessive force on Bailey by placing him a chokehold.

Plaintiff argues that the Individual Defendants who did not actively participate in the chokehold violated Bailey's constitutional rights when they were deliberately indifferent to a serious risk of harm the chokehold posed to Bailey's health when others used the chokehold on an inmate not resisting or fighting.  Just as with the claim of deliberate indifference to the plastic bag, the Individual Defendants do not address this incident in the context of deliberate indifference to a serious health risk.  Again, they argue there is no competent evidence a chokehold was ever applied  to Bailey and that, even if used, there is no evidence Bailey suffered any physical harm.  The Court has already rejected these arguments.  Individual Defendants present no evidence they were not deliberately indifferent to any serious health risk the chokehold posed when used on Bailey who was not struggling or otherwise resisting. Plaintiff has created a genuine issue of material fact and a reasonable jury could conclude that the Individual Defendants not actively participating in the chokehold deliberately disregarded a serious risk to Bailey's health when the others used a chokehold on him when he was not resisting or fighting.

### 3.    Deliberate Indifference to Medical Needs

Plaintiff asserts the Individual Defendants were deliberately indifferent to Bailey's serious medical and health needs when they left him in his cell even though he was in need of medical attention.  Plaintiff's evidence shows Bailey arrived on the 9th Floor of West Tower, slouched over onto his knees.  He was dragged on the floor of the hallway to his cell, convulsing and gagging, with is arms dragging and his head hitting the floor.  He had also been put in a chokehold at some point, even though he had not been

struggling or resisting. Already looking dead, Bailey was placed in his cell face down on the floor, with the surgical-type mask still covering his nose and mouth. Afterwards, two of the Individual Defendants "high-fived" each other. When the Individual Defendants returned and read the OC Warning, Bailey did not verbally respond, and other inmates noticed Bailey looked distressed, was turning purple, and was twitching. None of the Individual Defendants checked on Bailey at any point; they walked away. Bailey was found dead in the same position in which they left him.

Individual Defendants argue none of them saw Bailey in a condition which they subjectively believed necessitated medical attention. They contend that when they put Bailey in the cell on the 9th floor, he was coherent and looking around the cell. Then, when they returned with the OC Warning, Bailey looked around his cell and appeared fine, and after reading it him, Bailey was alive and looking around the cell. The Court is cognizant that the deliberate indifference standard is a high hurdle, and that it requires proof that Individual Defendants were subjectively aware of a substantial risk of serious harm and failed to take reasonable measures to abate this risk. *See Hare*, 74 F.3d at 649. But the Supreme Court has spoken to the subjective awareness element:

> Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Farmer*, 511 U.S. at 842. Plaintiff's version of the facts could support a reasonable jury's conclusion that the Individual Defendants did know of a substantial risk to Bailey

simply because the risk was so obvious.   *See id.*; *see also Gobert*, 463 F.3d at 345 n.12 (serious medical need is one "so apparent that even laymen would recognize that care is required.").   Plaintiff's evidence shows Bailey appeared lifeless as the Individual Defendants took him to his cell.  He was dragged down the hallway by his boxer shorts, his head hitting the floor.  He was convulsing and gagging.  He was placed face down on the floor with the surgical-type mask still covering his mouth and nose.  The Individual Defendants attack the statements of other inmates as to Bailey's condition when he was brought to his cell because "none of these witnesses would have been in a position to see Bailey in his cell at the same time."   This is a credibility issue for the fact finder, however, not for this Court on summary judgment.

Individual Defendants also ague to the Court that they could not have been deliberately indifferent to his medical needs when they had just taken him to the nurse's station shortly before to clean him up after being pepper-sprayed.  Specifically, the medical staff were in a better position to recognize a medical need than the guards and, because he had seen the nurse already, he was clearly not denied medical care.  This argument is bordering absurd.  To accept this argument would relieve any jail or prison official from his duty to secure medical attention for an  inmate whose medical needs demand it simply because the inmate had previously seen a medical professional for an unrelated and, possibly, less urgent matter.  Indeed, Bailey had seen the nurse; however, it is conceivable that a need arose after leaving the nurse's station which required Bailey receive medical attention beyond what he had recently received.  And if Bailey had a

medical need or crisis after leaving the nurse's station, it follows that the Individual Defendants would have been in the position to recognize the need–not the jail medical staff as the Individual Defendants assert.  The Court cannot say that the Individual Defendants did not demonstrate deliberate indifference to Bailey's medical needs in failing to seek medical care for him simply because they had already taken him to see a nurse, who cleaned his face of pepper spray and cleaned an old knee wound scab, and because she was in a better position to recognize a medical need if any.  Plaintiff's version of the facts, when taken as true, demonstrate Bailey showed an urgent need for medical care once he arrived on the 9th floor and was put in his cell, which was after his visit to the nurse's station.

Again, Plaintiff's evidence creates a genuine issue of material fact from which a reasonable jury could find the Individual Defendants were deliberately indifferent to Bailey's serious medical needs when they put him in his cell and walked away.

4.      Deliberate Indifference in Preventing Nurse from Seeing Him

Plaintiff's also contends Defendant Moreno was deliberately indifferent to Bailey's serious health and medical needs when he denied a mental health nurse access to Bailey after he had been left in his cell.  Plaintiff presented evidence that, upon arriving for work that morning, Nurse Briscoe, a jail psychiatric nurse, was told by another guard she needed to see Bailey immediately, handing her a note with Bailey's name and "Someone going to kill him!!!"  Nurse Briscoe went to the 9th Floor control center and asked to see

Bailey.  A male officer ordered her to leave, telling her that Bailey had been taken care of and there was no need for her to see him.  When she asked again to see Bailey, the male guard angrily told her no and to leave immediately.  Although Nurse Briscoe could not remember the guard's name, Plaintiff's evidence establishes Defendant Moreno was the only male officer in the control center at that time.  Defendant Moreno argues that Nurse Briscoe did not speak to him and he never denied a jail psychiatric nurse access to Bailey.  As with previous claims, this boils down to competing version of the events, requiring credibility determinations which this Court cannot make on summary judgment.  *See Tarver*, 410 F.3d at 753.

The Court has already concluded that Plaintiff created a genuine issue of material fact as to whether the Individual Defendants were deliberately indifferent to Bailey's serious medical needs when they placed him in his cell and left him there.  Accordingly, the Court concludes Plaintiff's summary judgment evidence also creates a genuine issue of material fact as to whether Defendant Moreno denied access to medical care for Bailey.  Plaintiff's version of the facts could support a reasonable jury in finding that Defendant Moreno was deliberate indifferent to Bailey's serious medical needs when he denied Nurse Briscoe access to Bailey.  *See Estelle*, 429 U.S. at 106; *Easter*, 467 F.3d at 464 (plaintiff must show that the jail or prison officials refused to treat the inmate, ignored his complaints, intentionally treated the inmate incorrectly, or acted in any similar way which would show a wanton disregard for any serious medical needs).

### 2.    Constitutional Rights Clearly Established

Plaintiff has raised a genuine issue of material fact as to whether Bailey's constitutional rights were violated by the Individual Defendants' actions or inactions. But, to defeat the Individual Defendants' assertion of qualified immunity, Plaintiff must also present evidence to show that the violation of Bailey's constitutional rights was objectively unreasonable in light of clearly established law at the time.

In the context of qualified immunity, "[f]or a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Sama v. Hannigan*, 669 F.3d 585, 2012 WL 335628, *5 (5th Cir. Feb. 3, 2012)(quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  In making this inquiry, the court considers the reasonableness of the conduct at the time of the incident.  *See Conroe Creosoting Co. v. Montgomery County, Tex.*, 249 F.3d 337, 340 (5th Cir. 2001).  Prior case law finding the exact same conduct to be unlawful is not necessary; instead, the unlawful nature of it may be "'readily apparent from relevant precedent in sufficiently similar situations.'"  *Brown v. Miller*, 519 F.3d 231, 236-37 (5th Cir. 2008)(quoting *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 257 (5th Cir. 2005)).  The court must look to whether the plaintiff sufficiently alleged facts to show that no reasonable officer could have believed his actions to be proper.  *See Babb v. Dorman*, 33 F.3d 472, 477-78 (5th Cir. 1994).

 At the time of the incident in June 2008, it was clearly established that prison officials could not maliciously and sadistically apply force to cause harm to a prisoner.

*See Hudson*, 503 U.S. at 7-10.  Since the Supreme Court's opinion in *Hudson*, it would have been clear to a reasonable officer that it would be unlawful and violate Bailey's constitutional rights by:  (1) placing a plastic bag over Bailey's mouth and/or nose for up to one minute; (2) failing to remove the surgical-type mask on Bailey's face once he was no longer a threat to spitting on a nurse and was lying face down in his cell, appearing lifeless; and (3) placing Bailey in a chokehold when he was not resisting, struggling, or otherwise fighting.  Under Plaintiff's version of the facts, a reasonable jury could find that the Individual Defendants' actions were not objectively reasonable in light of clearly established law at the time.

Also, at the time of the incident, the law was clearly established that a prisoner had a constitutionally protected right to be free from a prison official's deliberate indifference to the prisoner's serious medical needs.  *See Estelle*, 429 U.S. at 103-104 (1976); *Easter*, 467 F.3d at 465 (law clearly established that prisoner's Eighth Amendment rights violated when prison official refuses to treat him, ignores his complaints, intentionally treats him incorrectly, or acts similarly showing a wanton disregard for any serious medical needs); *see also Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982)(state official who knowingly deprives a prisoner of necessary medical treatment violates his constitutionally protected rights is "neither a recent nor a novel proposition of constitutional law.").  It would have been clear to a reasonable officer at the time of the June 2008 incident that it would be unlawful and violate Bailey's constitutional rights by: (1) demonstrating a deliberate indifference to the serious health

risk of suffocation posed to Bailey when Defendant Lacy held a plastic bag over his mouth and/or nose for up to one minute; (2) demonstrating deliberate indifference to the serious health risk of using a chokehold on Bailey by certain of the Individual Defendants; (3) demonstrating deliberate indifference to the serious medical needs of Bailey when they placed him in his cell, even though he appeared lifeless, was twitching and turning purple, and appeared to be in distress; and (4) when Defendant Moreno refused to allow Nurse Briscoe access to Bailey to check on him. Under Plaintiff's version of the facts, a reasonable jury could find that the Individual Defendants' actions were not objectively reasonable in light of clearly established law at the time. *See Williams*, 671 F.2d at 901.

Plaintiff has presented sufficient evidence to show that the violation of Bailey's constitutional rights was objectively unreasonable in light of clearly established law at the time.

### 3.    Conclusion

Plaintiff has met her burden, providing competent summary judgment evidence sufficient to raise a genuine issue of material fact regarding the incident in June 2008. Her version of the facts, which this Court must take as true for purposes of the summary judgment motions, suffices to support a reasonable jury in finding that Individual Defendants violated Bailey's constitutional rights by using excessive force against him and that the violation was objectively unreasonable under clearly established law at the time of the violation.  The disputed material facts regarding the Individual Defendants'

use of force prevents this Court from granting summary judgment on qualified immunity grounds. *See Estate of Henson v. Wichita Cnty, Tex.*, 652 F.Supp.2d 730, 748 (N.D. Tex. 2009)(O'Connor, J.). Plaintiff's version of the facts, again which this Court must take as true for purposes of the summary judgment motions, also suffices to support a reasonable jury in finding that Bailey's constitutional rights were violated when the Individual Defendants were deliberately indifferent to Bailey's serious medical and health needs and that the violation was objectively unreasonable under clearly established law at the time of the violation. The disputed material facts regarding the Individual Defendants' deliberate indifference to Bailey's serious medical and health needs prevents this Court from granting summary judgment on qualified immunity grounds. *See also Bazan*, 246 F.3d at 491-92 (not proper to resolve material dispute about a witness's credibility at summary judgment stage).

Accordingly, because the Court finds Plaintiff's version of the facts show Bailey's clearly established constitutional rights were violated, and Individual Defendants' conduct was objectively unreasonable under the circumstances, the Individual Defendants are not entitled to qualified immunity. *See Lytle*, 560 F.3d at 410. Summary judgment as to the Individual Defendants is **denied**.

## III.    Defendant Dallas County's Motion for Summary Judgment

### A.    Summary Judgment Standard

Summary judgment is appropriate when the pleadings, affidavits and other summary judgment evidence show that no genuine issue of material fact exists, and the

moving party is entitled to judgment as a matter of law.  FED.R.CIV.P. 56©); *Celotex Corp.*, 477 U.S. at 322.  A dispute of a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.  *Anderson*, 477 U.S. at 248.  All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant, and all disputed facts resolved in favor of the nonmovant. *See U.S. v. Diebold, Inc.,* 369 U.S. 654, 655 (1962); *Boudreaux v. Swift Transp. Co., Inc..,* 402 F.3d 536, 540 (5th Cir. 2005).

The moving party bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact.  *Celotex,* 477 U.S. at 322-25.  Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show the existence of a genuine fact issue for trial; but, the nonmovant may not rest upon allegations in the pleadings to make such a showing.  *Id.* at 321-25; *Anderson*, 477 U.S. at 255-57.  The nonmovant may satisfy this burden by providing depositions, affidavits, and other competent evidence; not with "conclusory allegations, speculation, and unsubstantiated assertions." *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996)(en banc).  Conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence cannot defeat a motion for summary judgment.  *See Anderson*, 477 U.S. at 249-52; *Boudreaux*, 402 F.3d at 540.  If the nonmovant fails to make a sufficient showing to prove the existence of an essential element to the case and on which the nonmovant will bear the burden of proving at trial, summary judgment must be granted.  *Celotex,* 477 U.S. at 322.

### B.      Municipal Liability

To state a claim under section 1983, the plaintiff must allege facts showing he has been deprived of a constitutionally protected right and that the deprivation occurred under color of state law.  *See Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005)(quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).  A municipality may be liable under section 1983 if the execution of one of its customs or policies deprives a person of his constitutionally protected rights.  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978).  The unconstitutional conduct complained of "must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability."  *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)(put another way, "there must be  both municipal culpability and causation.").

To successfully establish municipal liability, the plaintiff must establish proof of three elements: (1)  a policymaker; (2) an official policy; and (3) the policy or custom is the "moving force" behind the violation of constitutional rights.  *Id.* (these three factors are necessary in distinguishing a government employee's action causing an individual constitutional violation from constitutional violations identified as caused by the municipality itself).  An official policy is defined as:

> 1.  A policy, statement, ordinance, regulation, or decision that is officially  adopted  and  promulgated  by  the  municipality's  lawmaking officers  or  by  an  official  to  whom  the  lawmakers  have  delegated  policy-making authority; or

> 2.  A persistent, widespread practice of city officials or employee, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.  Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority.  Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)(en banc).

### C.    Failure to Train/Inadequate Training

Plaintiff argues the County is liable under section 1983 for failing to train its jail guards, thereby violating Bailey's constitutional rights.  The County contends summary judgment is appropriate because Plaintiff: (1) did not establish any excessive force was used; (2) she did not properly plead this claim; and, (3) regardless, she ultimately fails to meet her burden and establish a viable claim.  As for the first argument, the Court has already found that Plaintiff raised a genuine issue of material fact as to the Individual Defendants' use of excessive force on Bailey.  Accordingly, this argument is without merit.

As a second argument, the County alleges in its reply brief that Plaintiff did not properly plead or establish this claim.  Specifically, the County argues Plaintiff alleges four particular theories of failure to train for the first time in her responsive briefing to its summary judgment motion.  The County directs the Court to Plaintiff's answer to the County's interrogatories and her Amended Complaint, which allege only a brief and general claim related to her failure to train claim:

> In addition, The County, as applicable, failed and refused to implement customs, policies, practices or procedures regarding the medical evaluation and treatment [sic] inmates in the jail. In doing so, Defendant Dallas County knew that it was acting against the clear dictates of current law, and knew that as a direct consequence of their deliberate decisions, the very situation that occurred—*i.e.*, injury and death to prisoners—in all reasonable probability would occur.

Pl.'s Amended Compl., ¶ 6.10 (Doc. No. 17). Failure to train claims are generally subject to less stringent pleading standards because a plaintiff will likely not have specific information about the municipality's training procedures or policies, or lack thereof, before at least some discovery is conducted. *Thomas v. City of Galveston, Tex.*, 800 F.Supp.2d 826, 842 (S.D. Tex. 2011). Because of this less stringent standard, the Court will assume without deciding that Plaintiff has sufficiently plead her failure to train claim.

The Court now turns to the County's argument that Plaintiff fails to establish a viable failure to train claim. In her responsive brief, Plaintiff alleges the following four theories in support of her failure to train claim: The County failed to train its jail guards (1) how to handle mentally-ill inmates or inmates experiencing a mental crisis; (2) how to conduct a planned or non-spontaneous extraction of an inmate undergoing a mental crisis and/or an inmate with a known medical condition such as asthma; (3) not to use chokeholds against inmates; and (4) to timely read the O.C. Spray Administration Warning ("OC Warning") and to communicate an inmate's response, or lack thereof, to health providers.

Failure to train may be a "policy" for purposes of municipal liability under section 1983, but only when it "reflects a 'deliberate' or 'conscious' choice by a municipality." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). Municipalities are not normally liable for inadequate training, but failure to properly train may be a "policy" if "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. *Id.* at 390. A claim for failure to train requires proof that: (1) the municipality's training procedures were inadequate; (2) the municipality was deliberately indifferent in adopting its training policy; and (3) the inadequate training policy directly caused the violations in question. *See Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 171 (5th Cir. 2010), *cert. denied*, — U.S. —, 131 S.Ct. 3059 (2011). Deliberate indifference is a very stringent standard, requiring the plaintiff demonstrate proof "that a municipal actor disregarded a known or obvious consequence of his action." *Brown v. Bryan County, OK*, 219 F.3d 450, 457 (5th Cir. 2000). Generally, the plaintiff must establish a pattern of conduct to show deliberate indifference related to a failure to train claim; a showing of deliberate indifference is difficult, though not impossible, to base on a single incident. *See Sanders-Burns v. City of Plano*, 594 F.3d 366, 382 (5th Cir. 2010). In asserting a failure to train claim, the plaintiff must show "'at least a pattern of similar incidents in which the citizens were injured . . . to establish the official policy requisite to municipal liability under section

1983.'" *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998)(quoting *Rodriguez v. Avita*, 871 F.2d 552, 554-55 (5th Cir. 1989)); *see also Valle v. City of Houston*, 613 F.3d 536, 547 (5th Cir. 2010), *cert. denied*, — U.S. —, 131 S.Ct. 2094 (2011)(normally the plaintiff must show a pattern of similar violations, and when it involves excessive force, the prior actions must have involved injury to a third-party).

### 1.    Training Regarding Mentally-Ill Inmates

Plaintiff claims the County failed to train its guards of how to handle mentally-ill inmates or inmates having a mental crisis.  Plaintiff submits evidence from an 18-year Dallas County Jail ("DCJ") veteran, who is also a licensed jailer instructor, which shows: (1) there is no DCJ policy or procedure related to handling mentally-ill inmates or inmates experiencing a mental crisis; (2) he was never trained to deal with such inmates; (3) he has never trained a guard how to deal with such inmates; and (4) DCJ policy is to treat all inmates the same unless instructed otherwise by a psychiatrist or psychologist.  Plaintiff also cites the Court to the December 8, 2006 Department of Justice ("DOJ") letter to Dallas County Regarding Conditions at the Dallas County Jail as evidence that the County was on notice of the vulnerabilities of inmates to mental illness.  Pl.'s Ex. 16, p. 266.  Plaintiff goes on to contend that a reasonable jury could conclude this evidence supports a deliberate indifference to the constitutional rights of mentally-ill inmates.  The Court concludes Plaintiff's evidence fails to make the required showing of deliberate indifference as to the County.

First, review of the specific citation in the DOJ letter references the intake process related to juveniles, and the vulnerabilities of that population to mental illness and suicide. This case does not involve a juvenile. Additionally, Plaintiff makes no showing that the County's policymakers were aware of any inadequacies with the DCJ training. Critically, Plaintiff also fails to show "'at least a pattern of similar incidents in which the citizens were injured'" to establish municipal liability. *Snyder*, 142 F.3d at 798 (quoting *Rodriguez*, 871 F.2d at 554-55); *see also Valle*, 613 F.3d at 547 (normally the plaintiff must show a pattern of similar violations, and when it involves excessive force, the prior actions must have involved injury to a third-party). Her evidence fails to show a pattern of similar incidents with injuries which would have put the County on notice of similar constitutional violations. *See Valle*, 613 F.3d at 548 (merely citing prior incidents not enough unless the plaintiff establishes a pattern of constitutional violations similar to the case at hand).

Very difficult, though not impossible, a showing of deliberate indifference may also be made on a single incident. *See Sanders-Burns*, 594 F.3d at 382. However, Plaintiff fails to make that showing. In a case out of the Southern District of Texas, a plaintiff asserted a similar claim. *Hobart v. City of Stafford*, 784 F.Supp.2d 732 (S.D. Tex. 2011). In that case, the plaintiff claimed that the defendant was deliberately indifferent in its failure to train and/or supervise its emergency dispatchers and police officers regarding how to handle calls and encounters with mentally ill people. *Id.* at 752-53. The court there found that the plaintiff failed to show deliberate indifference by failing

to establish a pattern of injuries of constitutional violations as required by binding precedent. *Id.* at 753. However, the court did find that the plaintiff stated a claim under the very narrow "single incident exception." *Id.* The plaintiff had submitted specific evidence that the police chief and others were aware of inadequacies in the training related to mental health issues prior to the incident at issue and the use of force, and, more specifically, evidence related to the police officer involved in the incident. *Id.* There is no such similar showing in this case. Plaintiff has not submitted evidence establishing that the County's policymakers were aware of any inadequacies with the DCJ training. Nor has Plaintiff made any showing that the County was on notice of prior similar incidents involving these same Individual Defendants. Additionally, the Fifth Circuit recently indicated its wariness in finding municipal liability under the "single incident exception," noting that in the *one* case in which they found this exception applied, "there was an abundance of evidence about the proclivities of the particular officer involved in the use of excessive force." *Valle*, 613 F.3d at 549 (emphasis added).

Case law is clear that Plaintiff was required to show a pattern of similar constitutional violations resulting in injuries, which occurred before the incident at issue, sufficient to demonstrate deliberate indifference. *See Valle*, 613 F.3d at 547; *see also Snyder*, 142 F.3d at 798 (quoting *Rodriguez*, 871 F.2d at 554-55)(plaintiff must make a showing of "'at least a pattern of similar incidents in which the citizens were injured . . . to establish the official policy requisite to municipal liability under section 1983.'").

Plaintiff failed to make any showing of a pattern of similar constitutional violations resulting in injuries.  Nor are Plaintiff's allegations sufficient to state a claim under the very narrow "single incident exception."  Therefore, Plaintiff failed to establish a genuine issue of material fact as to deliberate indifference.  *See City of Canton*, 489 U.S. at 389.  Summary judgment on this claim is appropriate.

> ### 2.   Training How to Conduct a Planned or Non-Spontaneous Extraction of an Inmate from His Cell When He's Having Mental Crisis and/or Suffers From a Known Medical Condition

Plaintiff alleges the County failed to train its guards on how to conduct a non-spontaneous removal of an inmate having a mental crisis and/or an inmate with a known medical condition.  Plaintiff submits evidence that DCJ does not have a policy governing non-spontaneous or planned extractions of mentally-ill inmates from their cells.  The remainder of Plaintiff's argument references the fact that the extraction of Bailey was planned because they were transferring him, and had the guards been trained in planned extractions, they would not have waited five hours before transporting him, and they would not have used pepper spray on an inmate suffering a mental crisis and who had asthma.  Plaintiff concludes this failure to train caused a violation of Bailey's constitutional rights.

The Court concludes that Plaintiff wholly fails to properly allege a failure to train claim related to planned or non-spontaneous cell extractions of inmates suffering a mental crisis and/or who have a known medical condition such as asthma.  *See Zarnow.*, 614 F.3d at 171 (claim for failure to train requires proof that: (1) the municipality's

training procedures were inadequate; (2) the municipality was deliberately indifferent in adopting its training policy; and (3) the inadequate training policy directly caused the violations in question); *see also City of Canton*, 489 U.S. at 389 (failure to train must "reflect[ ] a 'deliberate' or 'conscious' choice by a municipality."). Plaintiff fails to create a genuine issue of material fact as to this claim. Plaintiff's evidence fails to establish proof of the three required elements of this claim.

What is more, the Court has already noted that case law clearly requires Plaintiff to show a pattern of similar constitutional violations resulting in injuries, which occurred before the incident at issue, sufficient to demonstrate deliberate indifference. *See Valle*, 613 F.3d at 547; *see also Snyder*, 142 F.3d at 798 (quoting *Rodriguez*, 871 F.2d at 554-55)(plaintiff must make a showing of "'at least a pattern of similar incidents in which the citizens were injured . . . to establish the official policy requisite to municipal liability under section 1983.'"). Plaintiff failed to make any showing of a pattern of similar constitutional violations resulting in injuries. Nor are Plaintiff's allegations sufficient to state a claim under the very narrow "single incident exception." Therefore, Plaintiff failed to establish a genuine issue of material fact as to deliberate indifference. *See City of Canton*, 489 U.S. at 389.

Summary judgment is appropriate on this claim.

### 3. Training Guards Not to Use Chokeholds Against Inmates

Plaintiff argues the County failed to train its guards not to use a chokehold on inmates. In attempting to create a fact issue, Plaintiff submits evidence that DCJ's use

of force policy does not prohibit the use of a chokehold, and there is no training of guards to not use a chokehold.  Furthermore, guards are authorized to use force on inmates.  Plaintiff then directs the Court to  the deposition testimony of defense expert Nizam Peerwani, M.D., that chokeholds have been discontinued by law enforcement in the other Texas counties in which he is a medical examiner.  In conclusion, Plaintiff states that the need to train guards on the prohibited use of a chokehold is obvious; therefore, the failure to train shows a deliberate indifference.

Again, Plaintiff fails to sufficiently allege a failure to train claim.  *See Zarnow.*, 614 F.3d at 171 (claim for failure to train requires proof that: (1) the municipality's training procedures were inadequate; (2) the municipality was deliberately indifferent in adopting its training policy; and (3) the inadequate training policy directly caused the violations in question); *see also City of Canton*, 489 U.S. at 389 (failure to train must "reflect[ ] a 'deliberate' or 'conscious' choice by a municipality."). Plaintiff's evidence falls far short of establishing proof of the three required elements of this claim.  And Plaintiff's statement that "[T]he need to train officers on the prohibited use of a chokehold, a form of force that has been held unconstitutional, is obvious. . . . and [therefore] shows a deliberate indifference on the part of Dallas County" is insufficient without more.  The statement of Dr. Peerwani, a defense expert, that the use of chokeholds has been discontinued by law enforcement in other Texas counties is also insufficient to show deliberate indifference as to the County.  Plaintiff fails to create a genuine issue of material fact as to this claim.  Therefore, summary judgment is appropriate.

Again, case law clearly requires Plaintiff to show a pattern of similar constitutional violations resulting in injuries, which occurred before the incident at issue, sufficient to demonstrate deliberate indifference. *See Valle*, 613 F.3d at 547; *see also Snyder*, 142 F.3d at 798 (quoting *Rodriguez*, 871 F.2d at 554-55)(plaintiff must make a showing of "'at least a pattern of similar incidents in which the citizens were injured . . . to establish the official policy requisite to municipal liability under section 1983.'"). Plaintiff failed to make any showing of a pattern of similar constitutional violations resulting in injuries. Nor are Plaintiff's allegations sufficient to state a claim under the very narrow "single incident exception." Therefore, Plaintiff failed to establish a genuine issue of material fact as to deliberate indifference. *See City of Canton*, 489 U.S. at 389.

Summary judgment is appropriate on this claim.

### 4.   Training Guards in Timely Reading of the OC Warning and Communication of Inmate's Response or Lack Thereof to Health Providers

As the final failure to train claim, Plaintiff argues the County failed to train its guards to timely read the OC Warning as well as the need to communicate an inmate's response, or lack thereof, to the questions to health providers. Plaintiff submits evidence that DCJ guards are permitted to use defensive chemical agents, like O.C. spray (a/k/a pepper spray), under the authority to use force. The County's policy related to the use of defensive chemical agents requires the guard to read an OC Warning. The OC Warning generally informs the individual that they will be treated to reduce any discomfort, and the effects will disappear with time, but may mask other medical

conditions the individual may have.  The OC Warning then requires the guard to ask five (5) questions for the individual's safety: (1) whether the individual is under the influence of any substance, (2) whether the individual has taken any drugs or alcohol in the previous 8 hours, (3) whether the individual normally uses narcotic or prescription drugs, (4) whether the individual has any serious health problems, including heart or lung, and (5) whether the individual has any allergies.

Plaintiff argues the County's policy does not address when a guard is to read the OC Warning, and the County does not train any of its employees on when to read the OC Warning.  Plaintiff contends the County is deliberately indifferent because: (1) it permits its guards to use OC spray on inmates, and mentally-ill inmates and inmates with medical conditions are within that population; and (2) it fails to train the guards in relation to the timing of when to read the OC Warning and to notify health providers if the inmate fails to respond to the questions.  The remainder of Plaintiff's argument alleges the Individual Defendants knew reading the OC Warning to Bailey so long after he had been sprayed was virtually meaningless.

Like the other failure to train claims, Plaintiff does not sufficiently allege a failure to train claim under this theory.  *See Zarnow.*, 614 F.3d at 171 (claim for failure to train requires proof that: (1) the municipality's training procedures were inadequate; (2) the municipality was deliberately indifferent in adopting its training policy; and (3) the inadequate training policy directly caused the violations in question); *see also City of Canton*, 489 U.S. at 389 (failure to train must "reflect[ ] a 'deliberate' or 'conscious'

choice by a municipality."). Plaintiff refers to the County acting with deliberate indifference, but fails to make a sufficient showing. Case law is clear that Plaintiff was required to show a pattern of similar constitutional violations resulting in injuries, before the incident at issue, sufficient to demonstrate deliberate indifference. *See Valle*, 613 F.3d at 547; *see also Snyder*, 142 F.3d at 798 (quoting *Rodriguez*, 871 F.2d at 554-55)("'at least a pattern of similar incidents in which the citizens were injured . . . to establish the official policy requisite to municipal liability under section 1983.'"). Plaintiff failed to make any showing of a pattern of similar constitutional violations resulting in injuries. Plaintiff's allegations also fail to sufficiently state a claim under the very narrow "single incident exception." Accordingly, Plaintiff failed to establish a genuine issue of material fact as to deliberate indifference related to failure to train as it relates to the OC Warning. *See City of Canton*, 489 U.S. at 389. Therefore, summary judgment on this claim is appropriate.

For the foregoing reasons, summary judgment is appropriate on all of Plaintiff's failure to train claims.

### C.    Denial of Medical Care

Plaintiff also asserts a claim against the County for denial of medical care. The record establishes that the Eighth Amendment applies to the analysis in this case as Bailey was a prisoner at the time of the incident. A denial of medical care violates the Eighth Amendment if it is a result of deliberate indifference to a prisoner's serious medial needs. *Estelle* , 429 U.S. at 106. Evidence that prison officials refused to treat

the inmate, ignored his complaints, intentionally treated him incorrectly, or acted in any similar way which would show a wanton disregard for any serious medical need can establish deliberate indifference. *Easter*, 467 F.3d at 464; *Domino*, 239 F.3d at 756.  A jail official is deliberately indifferent if he was subjectively aware of and disregarded a substantial risk of serious harm to the inmate and failed to take reasonable measures to abate this risk. *Hare*, 74 F.3d at 649 (citing *Farmer*, 511 U.S. at 837).

The Court concludes there are fact questions regarding the County's deliberate indifference to Bailey's serious medical needs.  Plaintiff first argues that the County's policy allowed Defendant Moreno to deny Nurse Briscoe access to see Bailey.  Plaintiff submits evidence that DCJ had a policy for using Mental Health Officers ("MHO") whose duties include escorting nurses to see and treat mentally ill inmates.  Plaintiff also presents some evidence that guards were instructed to treat all inmates the same unless instructed otherwise by a psychiatrist or psychologist.  These policies, Plaintiff contends, acted as the moving force behind the denial of medical care to Bailey.  Two nurses, Nurse Briscoe and Nurse Wooten, testified that on separate occasions, jail guards had delayed them in seeing other inmates from 20 minutes to 2 hours when these nurses were not accompanied by an MHO.  Nurse Wooten was even told she was denied access because there was no MHO with her.  Nurse Briscoe was not accompanied by an MHO when she tried to see Bailey.  Taking all evidence and reasonable inferences in the light most favorable to Plaintiff and resolving all factual disputes in her favor, Plaintiff has

raised a fact question as to whether the County was deliberately indifferent in denying nurses access to inmates.

Plaintiff also claims the County had a policy of keeping inmate health information secret from its "front-line officers".  Plaintiff presents the deposition testimony of one nurse that the County had a policy forbidding nurses from disclosing any health information related to an inmate because of "privacy laws" which acts as the "moving force" in denying inmates medical care.  To contradict the County's reason of privacy protection, Plaintiff cites the Court to language in the Health Insurance Portability and Accountability Act ("HIPAA") which permits the disclosure of an inmate's health information related to the health care and health and safety of that inmate.  Plaintiff also submits Bailey's intake health form which reflects he was an asthmatic; but, arguably pursuant to the County's policy, this was not permitted to be shared with the guards charged with Bailey's care, who ultimately pepper-sprayed him. Taking all evidence and reasonable inferences in the light most favorable to Plaintiff and resolving all factual disputes in her favor, Plaintiff has raised a genuine issue of material fact as to deliberate indifference of the County related to the failure to share an inmate's health information resulting in the denial of medical care.

Plaintiff claims the County has a pattern of failing to follow physicians' orders and failing to provide inmates with necessary medications.  Plaintiff submits evidence that the Decker jail, where Bailey was originally housed, did not keep psychotropic medications anywhere in that facility, nor was there a psychiatrist or psychologist on-

site.  Instead, those resources were located at the West Tower.  Plaintiff argues this decision of the County amounts to a policy of not providing proper and adequate care to mentally-ill patients at the Decker Jail.  Because of this policy, when the on-call psychiatrist ordered a psychotropic drug be given to Bailey to calm him, the nurse could not fulfill that order.  As a result, Plaintiff submits evidence that Bailey waited over five (5) hours to be transferred to the West Tower where he could receive these resources, meanwhile his condition worsened.  As further support, Plaintiff offers a DCJ inspection report from 2008 that physician orders were not being followed in a timely manner.  Additionally, Plaintiff submits a December 8, 2006, letter from the Department of Justice to Dallas County regarding conditions at DCJ which informed the County of "significant problems at the Jail" with regard to the administration of these types of psychotherapeutic medications.  Taking all evidence and reasonable inferences in the light most favorable to Plaintiff and resolving all factual disputes in her favor, Plaintiff has raised a fact question as to the County's deliberate indifference in failing to provide medical care to inmates with respect to following physicians' orders and providing necessary medications.

As a fourth theory, Plaintiff argues the County has a policy of giving jail guards complete discretion as when to administer the OC Warning to a sprayed inmate.  Jail guards are permitted to use defensive chemical agents like pepper spray under the policy related to use of force.  Plaintiff submits evidence that when pepper spray is used on an inmate, the guards are required to read the OC Warning to the inmate.  But, the guards

are not required to read the OC Warning within a specific time of the actual spraying. This, Plaintiff argues, is a policy of permitting guards to read the OC Warning at their discretion, allowing for disparate results. In raising a fact question as to the County's deliberate indifference, Plaintiff cites to language within the OC Warning itself which the County requires guards read. It states, "I am going to ask you 5 questions for your own safety. Not answering my questions . . . may seriously jeopardize your health and safety." The questions guards are required to ask include whether the inmate has any pre-existing health problems, such as lung issues. Taking all evidence and reasonable inferences in the light most favorable to Plaintiff and resolving all factual disputes in her favor, Plaintiff sufficiently raises a fact question as to whether the County is deliberately indifferent in denying medical care when it requires an OC Warning be read to pepper-sprayed inmates, which asks important questions of their health and emphasizes the need for answers to protect the inmate's health and safety, yet, the County does not require guards read the OC Warning within a certain time frame, but leaves it to the guard's discretion.

Lastly, Plaintiff argues the County has a policy of permitting jail guards to use whatever object is within reach to cover an inmate's face in the case of spitting. The Court has taken into consideration Plaintiff's summary judgment evidence and her allegations, viewing it in the light most favorable to her. But, the Court is not convinced she has sufficiently raised a fact question related as to this theory of deliberate indifference to medical care.

However, because Plaintiff raised genuine issues of material fact as the previous four theories of her denial of medical care claim, summary judgment is inappropriate. The Court **denies** summary judgment as to Plaintiff's claim for denial of medical care against the County.

### D.    State Law Claims

The County argues any claims Plaintiff asserts under state law are barred by sovereign or governmental immunity.  Plaintiff makes no argument related to these claims in her responsive briefing, and presents no evidence as to these claims either. Accordingly, any such claims would be waived.  Moreover, summary judgment on these claims is appropriate because sovereign immunity for these claims is not waived under the Texas Tort Claims Act.  TEX. CIV. PRAC. & REM. CODE ANN. § 101.001, *et. seq.* ("TTCA"); *see also Goodman v. Harris County*, 571 F.3d 388, 394 (5th Cir. 2009)(TTCA does not apply to claims arising out of intentional torts or to claims of failure to train or supervise); *Tex. Dept. of Pub. Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001)(intentional tortious conduct of governmental employees specifically excluded under TTCA); *Holland v. City of Houston*, 41 F.Supp.2d 678, 711 (S.D. Tex. 1999)(claims related to medical care and failure to train do not involve tangible property, so sovereign immunity not waived under TTCA).  Therefore, the Court **grants** summary judgment on Plaintiff's state law claims, if any.

## V.    Defendant Dallas County's Objections

The County filed Objections to Exhibits in Support of Plaintiff's Response to Defendants' Motion for Summary Judgment (Doc. No. 131).  Defendant objects to Plaintiff's Exhibit No. 4, Affidavit of Ronnie Lynn Lewis, and Plaintiff's Exhibit No. 5, Affidavit of Ramon Burley, on the same grounds: (1) there is no sufficient or adequate foundation and (2) it contains conclusory statements and is not based on personal knowledge.  After careful consideration, the Court **overrules** the objections as to Plaintiff's Exhibits Nos. 4 and 5, both affidavits of inmates at the DCJ in West Tower on the same day as the incident involving Bailey.  The Court finds the objections are without merit as these affidavits are based on the individuals' personal knowledge of what they saw and have sufficient foundation.  As these affidavits met the requirements under the Federal Rules, they are, therefore, competent summary judgment evidence. *See* FED. R. CIV. P. 56(c)(4).

The County objects to Plaintiff's Exhibits Nos. 7, 8, and 9, Plaintiff's expert reports from Christopher Long, Ph.D., Michael B. Foggs, M.D., and Werner U. Spitz, M.D.   Defendant objects on the basis of hearsay, lack of foundation, lack of authentication by an affiant with personal knowledge of the predicate facts, and conclusory and speculative statements.  The Court **overrules** these objections.  An expert witness' conclusions and opinions based on his review of relevant materials and his medical experience are admissible.  *See* FED. R. EVID. 702, 703.  Expert opinion may even be premised on hearsay.  *First Nat'l Bank of Louisville v. Lustig*, 96 F.3d 1554, 1576

(5th Cir. 1996).  Although the Court overrules the objections as having no merit, the Court will **grant** Plaintiff's request in her response to the County's objections to supplement each of the expert's reports with the proposed affidavits attached to her response.  (Doc. No. 140).  <u>Plaintiff must file these affidavits with the Court no later than three (3) days after the date this order is signed</u>.

Lastly, the County objects to Plaintiff's Exhibit No. 16, a letter dated December 8, 2006, from the Department of Justice to Dallas County regarding Conditions at DCJ. The County has advanced these same exact objections to this same piece of evidence before other judges of this Court.  For the same reasons those judges have overruled these objections, the undersigned **overrules** them for the same reasons: (1) the lack of foundation objection is not specific and, therefore, insufficient; (2) the letter is relevant as it lends support to Plaintiff's allegations of denial of medical care; (3) the letter falls under the public record exception to the hearsay rule; (4) the hearsay within hearsay objections are too general and therefore insufficient; and (5) the letter does not contain conclusory statements. *See Loftis v. Dallas County*, 3:10-CV-0116-B, 2011 WL 4090965, *3 n.1 (N.D. Tex. July 27, 2011)(Toliver, M.J.), *adopted by*, 2011 WL 4090962 (Sept. 14, 2011)(Boyle, J.)(citing *Duval v. Dallas County, Tex.*, No. 3:07-CV-0929-L, 2008 WL 4561563,*9 (Oct. 10, 2008)(Lindsay, J.) and *Palo v. Dallas County*, 3:05-CV-0527-D, 2007 WL 2140590, *7-9 (July 26, 2007)(Fitzwater, J.)).  Notably, the Fifth Circuit has addressed an appellate attack from the County as to the admission of this letter into evidence in a case where the plaintiff alleged the medical care at the DCJ was

constitutionally inadequate. *Shepherd v. Dallas County*, 591 F.3d 445, 457 (5th Cir. 2009). The Fifth Circuit stated, "[T]he report's relevance cannot seriously be doubted. [Plaintiff] alleged that medical care at the jail was constitutionally inadequate, and the report's recitation of facts and findings provide strong support for that claim." *Id.*

Accordingly, the Court **overrules** the County's objections to these exhibits.

## VI.    Conclusion

The Court **denies** the Individual Defendants' motions for summary judgment, finding they are not entitled to qualified immunity because Plaintiff's version of the facts create a fact question as to whether Bailey's clearly established constitutional rights were violated, and the Individual Defendants' conduct was objectively unreasonable under the circumstances.

The Court also **denies** summary judgment as to Plaintiff's claim against the County for constitutionally inadequate medical care. The Court **grants** summary judgment in favor of the County as to Plaintiff's claims for failure to train because she failed to sufficiently establish a viable claim under all four theories asserted.

**SO ORDERED.**

Signed March 28th, 2012.

_Ed Kinkeade_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE